UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CONNIE SIEDSCHLAG,

    Plaintiff,

    v.

WAL-MART STORES, INC.,

    Defendant.

CASE NO. C06-1730JLR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the court upon Defendant's motion for summary judgment (Dkt. # 44). Having considered the papers and counsels' oral arguments, the court GRANTS the motion. The court STRIKES Defendant's motions in limine (Dkt. # 60) as moot.

**I. BACKGROUND**

On December 3, 2003, Defendant Wal-Mart Stores, Inc. ("Wal-Mart") terminated Plaintiff Connie Siedschlag's employment as a Tire & Lube Express ("TLE") manager trainee. Wal-Mart contends that it did so for "Gross Negligence – Integrity Issue (Theft . . . Dishonesty, Misappropriation of Company Assets)" because Ms. Siedschlag failed to pay for an oil change on her car. Ms. Siedschlag contends that she was terminated for

ORDER GRANTING SUMMARY JUDGMENT – 1

complaining that female TLE manager trainees were paid less than their male counterparts.

**A.     Ms. Siedschlag's Termination for Theft**

Ms. Siedschlag worked at Wal-Mart from July 1996 onward in a number of hourly associate positions. In September 2003, she was accepted into Wal-Mart's management training program for the TLE store. The TLE store provides lube changes (such as oil changes) and sells tires. Once a trainee completed the 16-week TLE program, he or she would be offered a management position running a Wal-Mart TLE store. At the time, the TLE district manager was Addam Strom. Mr. Strom recruited Ms. Siedschlag to join the TLE division from her previous position in electronics, and he promoted her to become a TLE manager trainee. Mr. Strom also recommended Ms. Siedschlag for her first assignment managing a TLE store in California. Ms. Siedschlag was terminated before ever assuming that position.

On the day after Thanksgiving in 2003, Ms. Siedschlag took her pick-up truck into the Marysville Wal-Mart TLE store to have the oil changed and the wiper blades replaced. Wal-Mart's standard procedure for checking cars in and out is for the work order and the car keys to be placed together in a pouch and not returned to the customer until he or she has paid for the service. On this day, when Ms. Siedschlag returned to the TLE store, the technician handed the keys directly to her. She then placed them into her pocket and returned to work. After finishing her shift, Ms. Siedschlag picked up her truck from the TLE parking area for serviced vehicles—an area separate from the employee parking lot—and drove home. She first recalled that she should have paid for the $20 service while she was driving home. Sec. Carter Decl. (Dkt. # 56), Ex.A at 75 (hereinafter "Siedschlag Dep.").

ORDER GRANTING SUMMARY JUDGMENT – 2

On the Saturday after Thanksgiving, TLE Manager Chris Milham reviewed a standard daily report comparing work orders with cash register sales. The report indicated that Ms. Siedschlag's work order had not been paid. Mr. Milham posted Ms. Siedschlag's unpaid work order in his office in an area where he typically posted work orders requiring follow-up actions. Carter Decl. (Dkt. # 53), Ex. B at 31-32 (hereinafter "Milham Dep."); Siedschlag Dep. 76. Ms. Siedschlag saw her work order posted and again recalled that she had not paid for the service. Siedschlag Dep. 76. She remembers telling Mr. Milham and a technician to remind her to pay for the service, but she never actually paid for the service.[1] Siedschlag Dep. 152; Anderson Decl. (Dkt. # 49), Ex. E at 3 (Siedschlag Written Statement of Dec. 3, 2003) (hereinafter "Siedschlag Statement"); Carter Decl., Ex. C at 51 (hereinafter "Gonnella Dep.").

Mr. Milham left the work order on display in his office from Saturday until around mid-morning on Tuesday. He posted the work order "[t]o give her the opportunity to come forward." Milham Dep. 32. He did not verbally ask Ms. Siedschlag to pay because he had already determined that she was engaged in misconduct:

> We have associate parking where people park every day. You come and get your oil changed and then you get into your car after work in where the customers' cars are, you think you would remember to pay for your oil change. So [that] leads me to believe somebody's trying to steal from me.

*Id.* On Tuesday, Mr. Milham called his supervisor, Mr. Strom, to tell him about Ms. Siedschlag's unpaid service. According to Mr. Milham's recollection, Mr. Strom told him to collect the documentation and call Nick Gonnella, a District Loss Prevention

---

[1] Mr. Milham does not recall ever speaking to Ms. Siedschlag about the work order. *See* Milham Dep. 32. Throughout this summary judgment order, the court views the evidence in the light most favorable to Ms. Siedschlag. It is unclear, however, whether it benefits Ms. Siedschlag's account to have asked Mr. Milham to remind her to pay given that would mean she was actually confronted with the work order and decided not to pay. She does not contend that Mr. Milham excused her payment or allowed her to delay making the payment.

ORDER GRANTING SUMMARY JUDGMENT – 3

Supervisor.[2] *Id.* at 38. Mr. Milham immediately called Mr. Gonnella, who initiated an investigation.

On December 3, 2003, Mr. Gonnella interviewed Ms. Siedschlag. They first reviewed TLE procedures about work orders and lube services. Gonnella Decl. (Dkt. # 47), Ex. A at 1 (Gonnella Written Statement of Dec. 10, 2003) (hereinafter "Gonnella Statement"). When asked if she knew why Mr. Gonnella had asked to speak to her, Ms. Siedschlag exclaimed that she had forgotten to pay for her car service. *Id.*; Siedschlag Statement 1-3; Siedschlag Dep. 79. She said that she realized she had made a mistake and that she did not know why she had violated Wal-Mart TLE procedures by putting the keys in her pocket instead of putting them into a file folder. Gonnella Statement 1; Siedschlag Statement 1-3; Siedschlag Dep. 77-82. At first she claimed not to have remembered to pay for the service until confronted by it in the interview, and denied ever seeing the posted work order. Gonnella Statement 1. Later she admitted that she recalled the unpaid service while driving home and later when she saw the work order posted. *Id.*; *see* Siedschlag Statement 1-3; Siedschlag Dep. 75-76.

Mr. Gonnella concluded that Ms. Siedschlag's failure to pay for the oil change constituted theft. Gonnella Dep. 47; Gonnella Statement 1. Mr. Gonnella reviewed the facts of his investigation with his supervisor, Regional Loss Prevention Manager Shelly Gallardo. Gonnella Dep. 40. Ms. Gallardo agreed with Mr. Gonnella's recommendation to terminate Ms. Siedschlag's employment. Carter Decl., Ex. A at 47-49 (hereinafter "Gallardo Dep."). Mr. Gonnella then met with the Mt. Vernon Wal-Mart Store Manager

---

[2] Mr. Strom recalls telling Mr. Milham initially to "have her pay for the oil change," and having Mr. Milham respond, "Well, she's already gone." Carter Decl., Ex. E at 45 (hereinafter "Strom Dep."). No one disputes that Mr. Strom directed Mr. Milham to report the incident to Loss Prevention.

ORDER GRANTING SUMMARY JUDGMENT – 4

Rob Perryman, and presented the facts from his investigation.[3]  Perryman Dep. 38-39. Mr. Gonnella and Mr. Perryman decided to terminate Ms. Siedschlag's employment for "Gross Negligence – Integrity Issue."  Siedschlag Dep. 82-83; Gonnella Dep. 42; Perryman Dep. 38-39; Anderson Decl., Ex. F (Siedschlag Exit Interview).

**B.     Ms. Siedschlag's Complaints About a "Pay Cut" and Unequal Pay**

Ms. Siedschlag first complained to District TLE Manager Addam Strom about her salary in September 2003, shortly after she received her first paycheck as a manager trainee.  Siedschlag Dep. 89.  She asked why she was making less as a manager trainee than she had as an hourly associate.  *Id.* at 90.  He explained that her paycheck was structured differently and, overall, her pay had *increased*.  Strom Dep. 59-62.  The salary for manager trainees was comprised of three elements: (1) an hourly rate of $11.17; (2) a guaranteed eight hours of overtime per week; and (3) Geographic Assistance Pay ("GAP").  Strom Dep. 36-38, 59-62; Strom Decl. ¶¶ 7, 11-13, 15-16 (Dkt. # 48), Ex. A-B.  Ms. Siedschlag's salary as a manager trainee was approximately $1,285.18 per pay period.  Strom Decl., Ex. F; Anderson Decl. ¶ 20.  Prior to entering the management training program, Ms. Siedschlag's paychecks did not guarantee overtime and did not include GAP.  Her paychecks as an hourly associate, calculated at $14.77 an hour, averaged approximately $1,221.34 per pay period.  Strom Decl., Ex. F; Anderson Decl. ¶ 20.  After receiving her next paycheck, Ms. Siedschlag complained about a "pay cut" a second time.  Siedschlag Dep. 93-94; Strom Dep. 61.  Mr. Strom gave her the same explanation.  Strom Dep. 61.  Mr. Strom recalled only two conversations with Ms. Siedschlag confined entirely to the topic of the purported "pay cut."  *Id.* at 37-38, 61-62.

---

[3]Although Ms. Siedschlag did much of her training in Marysville, she was officially assigned to the Mt. Vernon store.  Siedschlag Dep. 28-29, 32.  Mr. Gonnella interviewed her at the Mt. Vernon store and Mr. Perryman was responsible for making the termination decision.  Carter Decl., Ex. D at 31, 70-71 (hereinafter "Perryman Dep.").

ORDER GRANTING SUMMARY JUDGMENT – 5

Ms. Siedschlag contends that she discussed pay issues with Mr. Strom three times and, at least once, complained about men being paid more than women.[4] Siedschlag Dep. 83-101, 167-73. She also testified that she spoke to two other, unnamed Wal-Mart employees about her paycheck but not about sex-based unequal pay: a regional manager and a personnel manager at the Mt. Vernon store. *Id.* at 95-99. The regional manager allegedly said that she would talk to Mr. Strom about it, *id.* at 97; the personnel manager purportedly told Ms. Siedschlag to talk to Mr. Strom about it directly, *id.* at 99. Mr. Strom purportedly confronted her about going "above his head" by speaking to the regional manager. *Id.* at 100-01. According to Ms. Siedschlag, Mr. Strom sounded angry when he said that Ms. Siedschlag was incorrect about the pay cut and sex-based unequal pay. *Id.* at 100-01, 172-73.

Ms. Siedschlag's complaint states four causes of action: (1) discrimination based on a sex-based pay disparity in violation of the Washington Law Against Discrimination ("WLAD"), RCW § 49.60.010 *et seq.*; (2) sex discrimination in violation of federal and state equal pay statutes, 29 U.S.C. § 206(d) and RCW § 49.12.175; (3) retaliation in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 215, and the WLAD, RCW § 49.60.210; and (4) respondeat superior. The undisputed facts show, and Ms. Siedschlag concedes, that all of the TLE manager trainees, male and female, were paid at the same rate and in the same manner during 2003. Strom Decl. ¶¶ 7, 11-13, 15-16, Exs. A-B; Resp. 1 (Dkt. # 55). She therefore focuses her attention on arguing that issues of fact preclude granting summary judgment in favor of Wal-Mart on the retaliation claim.

---

[4] In the morning of her deposition, she testified that her complaints to Mr. Strom were confined to her concern that she had received a pay cut by entering the management training program. Siedschlag Dep. 89-101. In the afternoon, she testified that she had specifically mentioned the disparity between male and female manager trainees in one or more of the conversations. Siedschlag Dep. 167-73.

ORDER GRANTING SUMMARY JUDGMENT – 6

## II.  DISCUSSION

Wal-Mart moves for summary judgment on all of Ms. Siedschlag's claims. Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

The court is not unmoved by Ms. Siedschlag's situation. She devoted seven years of exemplary service to Wal-Mart, commuted two hours a day to participate in the management training program, and was preparing to relocate out-of-state to take a position with a starting salary of approximately $32,000 per year. In return, her position and promotion were stripped away for failure to pay for a $20 oil change. The court is not, however, called upon to manage employee discipline or to rule on Ms. Siedschlag's contrition. The court must determine whether Wal-Mart discriminated on the basis of sex or retaliated on the basis of a protected activity. Wal-Mart may have treated Ms. Siedschlag rigidly (some would say harshly), but there is no evidence that it violated the law.

**A.     Ms. Siedschlag's Retaliation Claim**

Ms. Siedschlag contends that she was terminated for complaining about her unequal pay. Both the EPA, as part of the Federal Labor Standards Act ("FLSA"), and the WLAD include anti-retaliation provisions. 29 U.S.C. § 215(a)(3); RCW § 49.60.210.

ORDER GRANTING SUMMARY JUDGMENT – 7

The court applies the burden-shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for retaliation cases brought both under the EPA and WLAD. *See Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997) (applying *McDonnell Douglas* to FLSA retaliation claim); *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 876 (2d Cir. 1988) (same); *Hill v. BCTI Income Fund-I*, 23 P.3d 440, 446 (Wash. 2001), *abrogated on other grounds by McClarty v. Totem Elec.*, 137 P.3d 844 (Wash. 2006); *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 821 P.2d 18, 28-29 (Wash. 1991); *cf. Raad v. Fairbanks N. Star Borough Sch Dist.*, 323 F.3d 1185, 1196-97 (9th Cir. 2003) (applying *McDonnell Douglas* to Title VII retaliation claim); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002) (applying *McDonnell Douglas* to Title VII disparate-treatment claim). Under this standard, Ms. Siedschlag must first establish a prima facie case of retaliation. *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (applying *McDonnell Douglas* to Title VII and state-law retaliation claims). The burden then shifts to Wal-Mart to offer a legitimate reason for her termination. *See id.* Once Wal-Mart offers such a reason, the burden then shifts back to Ms. Siedschlag to show that there is a genuine issue of material fact about whether Wal-Mart's proffered reason for her termination—"Gross Negligence – Integrity Issue"—was pretextual. *See id.*

### 1. Prima Facie Case

To establish a prima facie case of retaliation, a plaintiff must prove: (1) she engaged in statutorily protected activity; (2) the defendant took an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *See Ray*, 217 F.3d at 1240; *Harris v. City of Seattle*, 315 F. Supp. 2d 1112, 1125 (W.D. Wash. 2004) (addressing retaliation claim under Washington law); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (setting forth standard for prima

ORDER GRANTING SUMMARY JUDGMENT – 8

facie case for a retaliation claim under Fair Employment and Housing Act). To establish a causal link under the WLAD, the plaintiff must show that retaliation was a "substantial factor" behind the decision to implement the adverse employment action. *See Harris*, 315 F. Supp. 2d at 1125; *Allison v. Housing Auth. of City of Seattle*, 821 P.2d 34, 42 (Wash. 1991).

The court has serious doubts that Ms. Siedschlag can prove a causal connection between her equal pay complaints to Mr. Strom and her subsequent termination approximately two-and-a-half months later. Unrebutted evidence shows that neither Mr. Strom nor Mr. Milham (whom Mr. Strom directed to notify Loss Prevention) played any part in the termination decision and never told the actual decisionmakers about Ms. Siedschlag's unequal pay complaints. Strom Dep. 39-40, 48-51; Strom Decl. ¶ 18; Milham Dep. 42-43. Unrebutted evidence also shows that the decisionmakers—Mt. Vernon Store Manager Rob Perryman, Loss Prevention Supervisor Nick Gonnella, and Regional Loss Prevention Manager Shelley Gallardo—knew nothing about Ms. Siedschlag's pay complaints. Perryman Dep. 37, 41; Gonnella Dep. 22-23, 69; Gallardo Dep. 50, 60; Siedschlag Dep. 99, 131, 173; *see Raad*, 323 F.3d at 1197 (9th Cir. 2003) (holding that there was no issue of fact and summary judgment was appropriate where plaintiff failed to produce any evidence that school principals who made allegedly retaliatory decisions were, in fact, aware of plaintiff's complaints). Furthermore, in late-November 2003—*after* Ms. Siedschlag's complaints about her pay and any alleged comments by Mr. Strom about going "over his head," and *before* her termination—Mr. Strom recommended and promoted Ms. Siedschlag to a TLE Manager position in California. Strom Dep. 84-85; Strom Decl., Ex. G. Such favorable treatment hardly suggests retaliatory animus. *See, e.g.*, *Manatt v. Bank of Am.*, 339 F.3d 792, 802 (9th Cir. 2003) (holding that evidence suggested no causal link where employer gave plaintiff a

ORDER GRANTING SUMMARY JUDGMENT – 9

pay raise and selected her for a prestigious assignment between the time of her complaint and the adverse employment decision).

Nevertheless, the Ninth Circuit holds that a causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two. *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004); *see Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (noting that a court may not infer causation from temporal proximity unless the time between an employer's knowledge of protected activity and an adverse employment action is "very close" and citing cases for the proposition that a three-month and four-month time lapse is insufficient to infer causation). Anywhere from two to three months has been found to be sufficiently proximate to support an inference of causation. *See Thomas*, 379 F.3d at 812 (seven weeks); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (three months); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731-32 (9th Cir. 1986) (two months).

Ms. Siedschlag's claim falls on the borderline between what is and is not sufficiently proximate in time to suggest, without other evidence, a causal link between a protected activity and the allegedly retaliatory termination. The court will therefore presume that she has proven a prima facie case of retaliation and proceed to the next step of the *McDonnell Douglas* analysis.

### 2.   **Legitimate, Nondiscriminatory Reason**

Ms. Siedschlag does not dispute that she committed misconduct by failing to pay for her TLE service and by changing her story during her interview with Mr. Gonnella. Wal-Mart contends that it terminated her employment for "Gross Negligence – Integrity Issue." This constitutes a legitimate, nondiscriminatory reason for its employment action. *See, e.g.*, *Quick v. Wal-Mart Stores, Inc.*, 441 F.3d 606, 610 (8th Cir. 2006) (holding that

ORDER GRANTING SUMMARY JUDGMENT – 10

where employer had legitimate, nondiscriminatory reason for discharging employee based on misconduct, plaintiff failed to meet her burden of showing pretext on pregnancy discrimination claim); *Collings v. Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995) ("[U]nless Reeves can show that the nondiscriminatory reason offered by Longview to explain its termination decision, i.e. that Reeves engaged in misconduct, was a pretext for disability discrimination, there is no triable issue under the ADA.").

### 3. No Evidence of Pretext

Because Wal-Mart has rebutted her retaliation claim with a legitimate, nondiscriminatory reason for terminating her employment, Ms. Siedschlag must carry the burden of showing that Wal-Mart's articulated reason is a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804; *Hill*, 23 P.3d at 446. She must present evidence to show that Wal-Mart's proffered reason is unworthy of belief. *See Kirby v. City of Tacoma*, 98 P.3d 827, 835 (Wash. Ct. App. 2004). Evidence of pretext must be "specific" and "substantial." *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998). In judging whether a proffered justification is pretextual, courts "only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Villiarimo*, 281 F.3d at 1063 (internal quotations omitted); *see Hill*, 23 P.3d at 451 n.14 ("It is not unlawful for an at-will employee to be discharged *because* he or she is perceived to have misbehaved, and courts must not be used as a forum for appealing *lawful* employment decisions simply because employees disagree with them.") (citation omitted).

Ms. Siedschlag offers no evidence whatsoever that her termination from employment was a pretext for retaliation. Her claim that Mr. Strom told TLE Manager Chris Milham to notify Loss Prevention does not raise an issue of fact. First, it is Wal-Mart's standard procedure to notify and ask Loss Prevention to investigate whenever a

ORDER GRANTING SUMMARY JUDGMENT – 11

Wal-Mart employee is suspected of misconduct. Strom Dep. 44-45, 51-52. Second, Mr. Strom's promotion of Ms. Siedschlag after her pay complaints dispels an inference of discriminatory animus.

Ms. Siedschlag suggests that Wal-Mart's discriminatory intent may be inferred from the company's failure to terminate two employees in Bellingham who similarly did not pay for service. The undisputed evidence contradicts this suggestion. The other two incidents are distinguishable on the facts. In the first, a male employee, Tim Labrenze, did not pay for a tire repair at the time of service. Labrenze Decl. ¶ 3 (Dkt. # 46). That repair was covered by a warranty, he was never obligated to pay at all, and the work order was cleared. Labrenze Decl. ¶¶ 2-3; Williams Decl. ¶ 9 (Dkt. # 45). The female employee had requested to buy tires on "an advance" with payment to be made with the next paycheck. Williams Decl. ¶ 12. She did not pay on time but subsequently *did* pay. *Id.* The store manager then admonished the TLE Manager Justin Williams because Wal-Mart had a fund to deal with such hardship requests and the advance never should have been made. *Id.* In contrast, Ms. Siedschlag never paid for her service and then prevaricated over her reasons for not doing so.[5]

---

[5]Ms. Siedschlag also implies that Wal-Mart's decision not to discipline and terminate the male employee at the Bellingham TLE store constitutes sex-based discrimination. *See* Resp. 8; Carter Decl. ¶ 6 (Dkt. # 53). In addition to the dissimilarity of circumstances between Mr. Labrenze and Ms. Siedschlag, the evidence actually cuts against Ms. Siedschlag's suggestion of disparate treatment. The two incidents in the Bellingham store involved both a man *and* a woman. Williams Decl. ¶ 8. Ms. Siedschlag fails to explain how a woman being treated in the same fashion as a man, and both being treated more favorably than she was, could suggest sex-based discrimination. *See, e.g.*, *Domingo v. Boeing Employees' Credit Union*, 98 P.3d 1222, 1226-27 (Wash. Ct. App. 2004) ("Although she states she believes she was treated differently from others based on her gender, her own declaration suggests that is not true. Domingo states, 'No other *man or woman* that I am aware of made a complaint about being hit by a co-worker at BECU and had this complaint dismissed' and '[n]o other *man or woman* that I am aware of was dismissed by BECU on trumped up charges of violence.'").

ORDER GRANTING SUMMARY JUDGMENT – 12

Ms. Siedschlag has failed to present evidence to show that Wal-Mart's legitimate, nondiscriminatory reason for terminating her employment—misconduct—is unworthy of belief. There is no evidence whatsoever that the decisionmakers who terminated Ms. Siedschlag ever knew about her pay complaints. Summary judgment in favor of Wal-mart on her retaliation claim is proper.

**B.    Equal Pay Claims**

In its opening brief, Wal-Mart contended that Ms. Siedschlag's EPA and WLAD discrimination claims based upon unequal pay were barred by the statute of limitations. Ms. Siedschlag failed to respond to this argument. The court presumes, therefore, that Wal-Mart's motion with respect to the statute of limitations has merit. *See* Local Rules W.D. Wash. CR 7(b)(2) ("If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that he motion has merit."). Ms. Siedschlag's rate of pay as a TLE manager trainee was set and communicated to her in September 2003 while this suit was brought in December 2006. *See* 29 U.S.C. § 255(a) (providing that federal EPA claims must be filed within two years, or within three years if violation was "willful"); *Antonius v. King County*, 103 P.3d 729, 732 (Wash. 2004) (citing RCW § 4.16.080(2) and noting that a claim for a discrete unlawful act under the WLAD must be brought within three years of the occurrence); *Seattle Prof'ls. Eng'g Employees Ass'n v. Boeing Co.*, 991 P.2d 1126, 1133 (Wash. 2000) (applying three-year limitations period for claims under WLAD and Washington Minimum Wage Act); RCW § 4.16.130 (providing a two-year catch-all statute of limitations). Her WLAD claim, based on Wal-Mart's decision to set her pay at a particular level, is thus time-barred. Her other claims are also time-barred except as to paychecks Ms. Siedschlag received after December 1, 2003, and *only* if the court accepts the three-year limitations period by finding "willfulness" under the federal EPA or applying the three-year period to the state

ORDER GRANTING SUMMARY JUDGMENT – 13

equal pay statute. *See* 29 C.F.R. § 790.21(b) (providing that action under EPA accrues on the date the paycheck is issued); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993).

Nonetheless, Ms. Siedschlag's claims fail on the merits. As she conceded in her brief and at oral argument, "the documents produced by Defendant to date do not illustrate an actual pay disparity in the Washington TLE Manager trainee program." Resp. 1. The undisputed evidence establishes that all of the TLE trainees in the program during 2003, male and female, were paid the identical hourly rate while they were in the program, plus 8 hours of guaranteed overtime, and GAP pay. Strom Decl. ¶¶ 7, 12, Ex. A. She cannot establish a prima facie case under the state and federal equal pay statutes or under WLAD. *See* 29 U.S.C. § 206(d)(1); RCW § 49.12.175; *Adams v. Univ. of Wash.*, 722 P.2d 74 (Wash. 1986) (examining federal EPA and interpreting state equal pay statute).

**D.     Respondeat Superior**

Ms. Siedschlag argues that her respondeat superior claim should not be dismissed on summary judgment because she has set forth sufficient allegations that Wal-Mart's employees proximately caused her harm. Resp. 10. The court disagrees. Ms. Siedschlag has failed to set forth specific facts showing a genuine issue of fact on this claim or on any underlying claims to which the respondeat superior doctrine might apply. *See* Fed. R. Civ. P. 56(e).

**E.     Plaintiff's Request for a Continuance Pursuant to Rule 56(f)**

Ms. Siedschlag seeks a Federal Rule of Civil Procedure 56(f) continuance because she anticipates "additional factual issues and evidence will come to light with the production of additional discovery responses, the ability to contact recently disclosed employees and witnesses, and a broader reach of discovery should the Court allow for the original scope of Plaintiff's discovery requests to be reinstated." Resp. 12-13. Rule 56(f)

ORDER GRANTING SUMMARY JUDGMENT – 14

provides that "[i]f a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . (i) deny the motion; (ii) order a continuance to enable affidavits to be obtained, depositions to be undertaken, or other discovery to be undertaken; or (iii) issue any other just order."

Ms. Siedschlag cannot articulate what specific discovery she seeks, what the discovery would uncover, and how those facts would preclude the entry of summary judgment in favor of Wal-Mart.[6] Furthermore, the court has already sanctioned her counsel for a tardy discovery motion and her failure to confer with opposing counsel. *See* Minute Entry of Oct. 29, 2007 (Dkt. # 41); *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994) ("We will only find that the district court abused its discretion [in not permitting further discovery under Rule 56(f)] if the movant diligently pursued its *previous* discovery opportunities, and if the movant can show how allowing *additional* discovery would have precluded summary judgment."). Ms. Siedschlag has not persuaded the court that a Rule 56(f) continuance would be proper.

### III. CONCLUSION

The court GRANTS Defendant Wal-Mart's motion for summary judgment (Dkt. # 44) and dismisses the complaint with prejudice and without costs to either party. The court STRIKES Defendant's motions in limine (Dkt. # 60) as moot.

---

[6]Ms. Siedschlag does not, for example, seek to certify a nationwide class such that the court's decision would be assisted by expert statistical analysis of class-wide disparities and anecdotal evidence from class members from around the country. *See Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1178 (9th Cir. 2007).

ORDER GRANTING SUMMARY JUDGMENT – 15

Dated this 8th day of February, 2008.

_____
JAMES L. ROBART
United States District Judge

ORDER GRANTING SUMMARY JUDGMENT – 16